CHARLES MILLER, Respondent, v. MINNEAPOLIS, SAINT PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

(195 N. W. 33.)

**Master and servant — negligence and proximate cause in action under Federal Employers' Liability Act held for jury.**

In an action for personal injuries brought under the Federal Employers' Liability Act, it is *held* that negligence and proximate cause were questions for the jury.

Opinion filed July 26, 1923. Rehearing denied September 28, 1923.

Master and Servant, 26 Cyc. pp. 1460 n. 32; 1462 n. 39.

From a judgment of the District Court of Stutsman County, *Coffey, J.,* defendant appeals.

Affirmed.

*S. E. Ellsworth* and *John E. Palmer,* for appellant.

Negligence of the carrier, however, must be shown as the basis of liability, under the Federal act as under the state law. Under both laws negligence is the basis of liability, and there can be no recovery under either act in the absence of negligence on the part of the railroad

company or some of its employees. Wingen v. R. Co. 42 N. D. 517, 173 N. W. 832; Koofos v. G. N. R. Co. 41 N. D. 176, 170 N. W. 859; Froelich v. N. P. R. Co. 42 N. D. 550, 173 N. W. 822.

Negligence is a fact which must be shown and will not be presumed; and there is always a presumption against negligence and in favor of innocence. Alvina v. Pub. Serv. R. Co. (N. J.) 117 Atl. 709.

Negligence will not be presumed from a mere occurrence of an accident resulting in injury, but must be established by evidence of the fact, or by circumstances evidentially shown from which the fact reasonably may be inferred. Chesapeake & O. R. Co. v. Rodgers (Ky.) 237 S. W. 18.

A fellow servant must be free to execute simple ordinary movements in the performance of his duties and depend upon his associates, in the exercise of like liberty of action to pay some heed to their own situation. Salus v. G. N. R. Co. (Wis.) 147 N. W. 1070.

It would be impracticable to apply the law of negligence to every slight departure from the best or wisest modes of action in the ordinary simple or trivial affairs of life. Johnson v. Berwind Fuel Co. (Wis.) 141 N. W. 1018.

The fact of accident or an injury to an employee in the course of his employment carries with it no presumption of negligence on the part of the employer. Midland Valley R. Co. v. Graney (Okla.) 185 Pac. 1088; Schmidt v. Frederickson (Wis.) 150 N. W. 426; Munia v. C. & N. W. R. Co. (Wis.) 159 N. W. 749; Hong v. So. R. Co. (Ky.) 159 S. W. 779; New York C. etc. R. Co. v. Allen (Ind.) 113 N. E. 315; Ruping v. Ore. Short Line (Utah) 171 Pac. 145.

The servant assumes all of the ordinary risks of his employment which are known to him, or which could have been known with the exercise of ordinary care to a person of reasonable prudence and diligence under like circumstances. C. R. I. & P. R. Co. v. Hughes, 166 Pac. 411; C. R. I. & P. R. Co. v. Hessenflow (Okla.) 170 Pac. 1161.

The common-law rule with respect to the employees' assumption of risk of injury from a defective appliance governs an action brought under the Employers' Liability Act of April 22, 1908, where such appliance is not covered by a Federal statute enacted for the safety of employees.

Where a certain risk of an employment is plainly observable to an employee, and he continues to work where such risk is constantly encountered, he assumes the risk, as a matter of law, and the question is not for the jury. Lindsay v. N. Y., N. H. & H. R. Co. 112 Fed. 384; McCutcheon v. Chicago, M. & St. P. R. Co. (Ia.) 164 N. W. 774.

If the railroad company had no notice of the dangerous situation or remedied it as soon as possible there was no negligence. Thomas v. Hines, 100 S. E. 657.

And again, in the same: "Of course, when the employee's negligence is in fact the sole cause of the injuries, he is not entitled to recover any damages from his employer." Koofos v. G. N. R. Co. 41 N. D. 176.

*Knauf & Knauf,* for respondent.

If the plaintiff was injured through the negligence of a fellow servant, then the old common-law rule on assumption of the risk would not apply. N. P. R. Co. v. Maerkl, 117 C. C. A. 237.

R. C. v. Santer, 223 Fed. 604, 139 C. C. A. 150; Tredway v. R. Co. 191 S. W. 930; R. Co. v. Commr. 161 Pac. 1139; R. Co. v. Williams, 194 S. W. 920; R. Co. v. Trust Co. 115 N. E. 685; Salabrin v. R. Co. 160 N. W. 552; Hardwick v. R. Co. 168 S. W. 328; Federal Employers' Liability Act, April 22, 1908.

The law is that it is only necessary for the plaintiff to show a negligent act or omission for which the master is responsible. Kreig v. Westinghouse & Co. 214 U. S. 249, 53 L. ed. 984, 29 Sup. Ct. Rep. 619; Standard Oil Co. v. Brown, 218 U. S. 78, 54 L. ed. 939, 30 Sup. Ct. Rep. 669; Deserant v. Cerillos Coal R. R. Co. 178 U. S. 409, 44 L. ed. 1127, 20 Sup. Ct. Rep. 967; Morgan v. Robinson, 157 Cal. 348, 107 Pac. 695; Seaboard Air Line v. Witt, 4 Ga. App. 149, 60 S. E. 1012; Labatt, M. & S. § 813.

If there were such defects and dangers that a man of ordinary prudence and care in the performance of his duties would have discovered, then these would be defects and dangers "plainly observable" to the appellee, and if he failed to observe them, he would be held to have assumed the risk. St. L. I. M. & S. R. Co. v. Birch, 89 Ark. 424, 28 L.R.A.(N.S.) 1250, 117 S. W. 243.

It is essential to the assumption of risk, not only that the servant shall know the defect out of which the danger arises, but that he should

appreciate the danger, or that the danger should be manifest to a man of ordinary intelligence and experience, in the line of work in which the servant is engaged. Cooley, Torts, 3d ed. 1048; National Steel Co. v. Hore, 83 C. C. A. 582; R. Co. v. Archibald, 170 U. S. 665, 42 L. ed. 1188; R. Co. v. Birch, 117 S. W. 243; R. Co. v. Swearingen, 196 U. S. 51, 49 L. ed. 382.

CHRISTIANSON, J.   This is an action for personal injuries, brought under the Federal Employers' Liability Act.   It was tried to a jury, and a verdict returned in favor of the plaintiff for $500.   Defendant moved for judgment notwithstanding the verdict, or for a new trial. The motion was denied, and defendant has appealed from the judgment.

The sole question presented on this appeal is the sufficiency of the evidence to sustain the verdict.   In other words, it is contended by the defendant that the court erred in denying its motion for a directed verdict and its motion for judgment notwithstanding the verdict.

The complaint alleges:—

"That on May 11th, 1921, this plaintiff was engaged by and for said defendant as a section laborer at ·Kensal, North Dakota, with the section crew which then and there consisted of a section foreman and another laboring man in charge of the said rails, track, ties and road bed and right of way of said defendant for a space of over five miles in a northwesterly direction from Kensal in Stutsman county, and that the said defendant was in duty bound to furnish good and sufficient tools and equipment with which to carry on and do the work of repair of said rails and track, of ties under said track, and the road bed. That on May 11th, 1921, this plaintiff was so engaged with the section foreman, and the said defendant furnished therefor two picks and other equipment and tools, that one of said pick's handles had negligently been permitted to become old and worn and rotted and that while the other of said laborers was using the same in the ordinary manner and way it broke owing to its negligent and defective condition which had, unbeknown to this plaintiff, existed for many weeks, so that when said laborer struck the pick, in the usual manner in an old decayed tie, the handle broke, and thereupon the section foreman in charge of said section crew instructed said other laborer to aid and assist this plaintiff in pulling out old rotten ties ·from underneath said

50 N. D.—14.

railway rails and track, and that the pick which plaintiff was using was old, badly worn, and dilapidated, and unsafe for the use of two, and which the said foreman instructed plaintiff was good and sufficient for the other laborer and plaintiff to pull upon and work with during the balance of May 11th, 1921, and believing him and relying on his instructions this plaintiff struck said pick in the end of an old decayed tie lying underneath the rail and track of said defendant at a point about 3½ miles in a northwesterly direction from Kensal, North Dakota, on said line of railway, plaintiff and the other of said section laborers, thereupon both seizing the handle of said pick, as directed by such foreman, dragged and in drawing it from said road bed from underneath said rails over and down the side of the embankment to the usual place, the said other laborer, negligently pulled on the said handle of said pick, so as to draw it and plaintiff to the sidewise of said road bed embankment in such a manner as to cause this plaintiff's heel and foot to strike against a loose rock in and on said road bed and right of way of defendant, causing him to lose his balance and to fall and said other laborer to negligently pull and cause said tie to strike with great force and weight upon and against plaintiff's foot, ankle and leg, crushing, fracturing and breaking his ankle, leg, and foot, causing this plaintiff great and permanent injury, suffering and pain in such leg, foot and ankle, without any negligence on his part, and causing him by reason of the premises herein aforesaid, to suffer damage and loss in the sum of $7,500, and all of which occurred while said plaintiff and defendant was actually engaged in interstate commerce."

The answer admits that the plaintiff was employed by the defendant as a section laborer on or about the time the injury was sustained; but alleges that the injury was of a slight and temporary character, and denies that such injury was occasioned by any negligence on the part of the defendant or its employees. It also alleges that whatever injury plaintiff sustained was caused solely by his own negligence; and that the injury, if any, was due to risks and hazards knowingly and voluntarily assumed by the plaintiff.

The plaintiff testified: I am 49 years of age. In the spring of 1921 I was working for the defendant railway company on the section at Kensal. On the day the accident happened we were taking out old ties and putting in new ones. Mike Davey was our foreman. His son

Henry and I were working together.  I struck the pick in the tie.
We had only one pick and we went down the bank with the tie, kind
of fast, and I met an accident with a rock, and I went over the rock
and of course, as I did, he having hold of the handle brought the force
of the tie against my ankle.  We were both working with the one
pick for the reason that about two or three ties before, if I remember,
he (Henry Davey) broke his pick chopping off slivers.  He broke the
handle on his pick.  It was an old decayed handle.  If it hadn't been
it would not have broken.  After he broke the handle of his pick we
both worked with one pick.  We did this because the foreman directed
us to do it.  Henry Davey, the man working with me, was a young
man about 21 or 22 years of age.  I went over with the force of the
tie.  At the time I fell Henry Davey had hold of the pick.  The tie
struck me right like that (indicating the place where it struck).  It
pained me then and pains me today.  The work we did consisted of
raising the track, when there were defective ties, taking out spikes
and pulling out the old ties and putting in new ones and tamping
them.

On cross-examination plaintiff testified:
Henry Davey and I were fellow-laborers that day, both working
under the direction of the same foreman.  The accident occurred be-
tween 3 and 4 o'clock in the afternoon.  We pulled the old ties out.
with the pick.  That is the way it was done.  It was a heavy tie.  We
both pulled on the same pick.  If Davey hadn't had hold of the handle
I don't believe I would have been hurt.  I blame him that way, both of
us having hold of that one handle.  We were both pulling the tie up
to the time I struck the rock.  I don't think I would have pulled the
tie against my foot if Davey hadn't been there.
Q.  Was it all Mr. Davey's fault?  A.  Why it was his fault.  If he
hadn't had hold of the handle at that time, I wouldn't have gotten
hurt.
Q.  Your pulling; the force you were using, wouldn't have brought
the tie against your foot?  A.  No, it wouldn't because if a man lost his
hold, he would have went over and the tie would have stopped.
Q.  Now Mr. Miller after you fell down, and recovered your balance

again and got your foot out of the place, where was Henry Davey, beside you? A. No sir, he was up on the track, at that time.

Q. He had gone back where Mike Davey was working on the track? A. No one had come down there where I was at all.

Q. Isn't it true Mr. Miller that just as soon as you started down the embankment with that tie, pulling that pick—as soon as you started away from the track that Mr. Davey went back to assist his father in putting in the new tie? A. No. sir.

Q. That is true isn't it? A. After we got the tie down, he went back.

Q. And you want it understood here now that he kept pulling down the side of the embankment, 7 or 8 feet high, all the time, until you reached the bottom? A. Yes sir, that is it.

Q. When you recovered your balance, he was back up on the track? A. Yes sir. . . .

Q. Isn't it true Mr. Miller, that on the 11th day of June or a month after the accident, that you didn't blame Mr. Henry Davey for this accident in any way? Isn't that true? A. No, I didn't blame Henry Davey. If he hadn't had hold of the pick, I wouldn't have blamed him. But I told him it that way, as I told Mr. Hendershot, if we had two picks, I would never got hurt. . . .

On re-direct examination plaintiff testified:

Q. Now I don't know if you have made it just plain to the jury as to the pulling out of that tie, and pulling it down the side of the embankment; just explain to the jury whether you went straight down, or whether you shifted to one side or what. A. We started straight down and then we kind of swung to the left. He had hold of the left side of the pick and then I met this rock.

Q. Did he crowd you over to one side? A. No, he was on the left side, going so fast that I went with him.

Q. He was a younger man than you and stronger? A. A good deal younger than me, yes.

Q. You were how old when you got hurt? A. Forty-eight when I was hurt. . . .

Q. Did Henry Davey, the man working with you have hold of the

pick at the time the injury occurred to you? A. He had hold of the pick to the last thing until I fell.

Q. The pick was still in the tie? A. Yes sir, when it struck me.

Q. And he was pulling on it at the time? A. Yes sir, he was pulling on it at the time.

Q. Then from the time the tie was pulled out you didn't go straight down? A. No we didn't.

Q. He shoved you over? A. No he didn't shove me, he pulled me, he was on the left hand side of me.

Q. Kind of pulled you over towards his side? A. Yes sir. . . .

On re-cross-examination he testified:

Q. How much do you weigh Mr. Miller? A. Oh, I don't know, about one hundred and fifty.

Q. Do you know how much Henry Davey weighs? A. All of that if not more.

Q. He is a heavier man than you are? A. I think he is.

The foreman who was called as a witness for the defendant, testified that the removal of the ties, including the particular tie in question, was being done according to his directions. Henry Davey denied that he had broken the handle of his pick. He admitted, however, that only one pick was being used by himself and the plaintiff on that particular day. He testified further, "We usually have two picks but didn't happen to have only one that day."

It is well settled that negligence is the basis of liability under the Federal Employers' Liability Act, and that there can be no recovery under such act in the absence of negligence on the part of the railway company or some of its employees. Wingen v. Minneapolis & St. P. & S. Ste. M. R. Co. 42 N. D. 517, 521, 173 N. W. 833. Generally negligence and proximate cause are questions for the jury. 29 Cyc. 632, 634 and 639. They become questions of law only when the facts are undisputed and reasonable men in the exercise of reason and judgment can draw only one inference from them. While the question of negligence in this case is a close one, we do not believe it can be said, as a matter of law, that the injury sustained by the plaintiff was not caused by the negligence of the defendant and its employees. It is

undisputed that it was usual to furnish each man engaged in removing ties with a pick; that at the time the accident occurred two men were, under the express direction of defendant's foreman, required to use one pick. And plaintiff testified that he would not have been injured if it had not been for the fact that his co-laborer, Henry Davey, had hold of the pick, and, as he said, "kind of pulled" him (plaintiff) over towards his side. It is true this testimony was in the nature of a conclusion of the witness, but it was elicited in response to questions propounded by defendant's counsel, and became part of the evidence in the case by the tacit consent of both parties. Upon the record as a whole we believe that negligence and proximate cause were questions for the jury.

It is, also, contended that the plaintiff assumed the risk of the injuries which he sustained. Respondent, however, claims that the question of assumption of risk is not involved on this appeal. He says that upon the trial of the action that question was, in effect, withdrawn from the case. In support of this he calls attention to the following statement in the order denying the motion for judgment notwithstanding the verdict, or for a new trial: "The attorney for the defendant having stated in open court at the trial of said action that the only question at issue was that of negligence on the part of the defendant and contributory negligence on the part of the plaintiff, and that there was no question of assumed risk involved in this action.". We must, of course, assume the facts to be as so stated. It is, also, significant that the trial court gave no instruction on the subject of assumption of risk, and no instruction was requested. Otherwise, the court gave full and explicit instructions on the questions of negligence and contributory negligence and on the doctrine of comparative negligence, embodied in the Federal Employers' Liability Act.

Of course, in so far as the phrase, "assumption of risk" is used merely "to connote the general rule that the master is not liable for injuries which are not due to fault on his part" (3 Labatt, Mast. & S. § 1186a, page 3189) the question is involved in this appeal; but in so far as concerns the doctrine of assumption of risk in its true sense, viz. :—that the servant assumed risks which existed by reason of the negligence of the master, we do not believe the question is properly reviewable on this appeal. See 3 C. J. page 699. See also Illinois C. R. Co. v.

Skaggs, 240 U. S. 66, 60 L. ed. 528, 36 Sup. Ct. Rep. 249; Southern R. Co. v. Gadd, 232 U. S. 572, 58 L. ed. 1099, 34 Sup. Ct. Rep. 696; Chesapeake & O. R. Co. v. De Atley, 241 U. S. 310, 60 L. ed. 1016, 36 Sup. Ct. Rep. 564.

In this case, however, the injuries were sustained while the plaintiff and his co-employee were engaged in the performance of work in a somewhat unusual manner, and with inadequate tools. The work was so performed under the immediate direction and orders of the foreman. In the circumstances it would seem that the question of assumption of risk was in any event one for the jury. 4 Labatt, Mast. & S. § 1362, p. 3920. See also 26 Cyc. 1221; Chesapeake & O. R. Co. v. De Atley, supra. And, of course, the plaintiff did not assume the risks of any injury caused by the negligence of a fellow servant, for while it is true the Federal Employers' Liability Act did not abolish the doctrine of assumption of risk (Seaboard Air Line R. Co. v. Moore, 228 U. S. 433, 57 L. ed. 907, 33 Sup. Ct. Rep. 580; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 58 L. ed. 1062, L.R.A.1915C, 1, 34 Sup. Ct. Rep. 635, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834), it did abolish the fellow servant rule, and imposes liability for an employee's injury, "resulting in whole or in part from the negligence of any of the officers, agents or employees" on the carrier.

The judgment appealed from is affirmed.

Bronson, Ch. J., and Johnson, Birdzell, and Nuessle, JJ., concur.